FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

97 MAY -7  AM 9: 28

U.S. DISTRICT COURT
N.D. OF ALABAMA

JO CHITWOOD,                          )
                                      )
          Plaintiff,                  )
                                      )
vs.                                   )
                                      )
CITY OF FORT PAYNE, FORT PAYNE        )
PERSONNEL BOARD, DAVID WALKER AND     )
JAMES C. MCGEE,                       )
                                      )
          Defendants.                 )

## ENTERED

**MAY 7   1997**

CV 96-PT-0205-M

---

## Memorandum Opinion

---

This cause comes on to be heard on a motion for summary judgment filed by defendants the City of Fort Payne, Alabama, ("City"), the Fort Payne Personnel Board ("Board"), David Walker ("Walker") and James C. McGee ("McGee") on February 28, 1997. The plaintiff, Jo Chitwood ("Chitwood"), claims (1) that she was discriminated against by the City in violation of Title VII and by the individual defendants in violation of the Equal Protection Clause through the right of action provided by the Civil Rights Act of 1871, 42 U.S.C. § 1983; (2) that she was retaliated against by the City in violation of Title VII and by the individual defendants in violation of the Equal Protection Clause via § 1983; (3) that she was deprived of her First Amendment rights of freedom of speech and association in violation of § 1983 by the City and the individual defendants; (4) that the defendants subjected her to an abuse of process in violation of Alabama law; (5) that the defendants defamed her in violation of Alabama law; and (6) that Walker intentionally interfered

50

with her business relations in violation of State law.[1]  The defendants contend that Chitwood has failed to establish that any of her claims are valid and that summary judgment is due.

On a motion for summary judgment, the court must assess the proof to ascertain whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes prove the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing the presence of a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . " in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). Considering the above, this court must examine the evidence to determine the existence of genuine issues of material fact as to the various claims.

## Facts

In lieu of a recitation of the facts, the defendants have referenced the court to the affidavits

---

[1]  The plaintiff originally raised claims under Title VII against the individual defendants and claims under § 1983 for gender discrimination and sex harassment against the City, both of which the plaintiff abandoned in response to the defendants' motion. The claims abandoned by the plaintiff will therefore be DISMISSED, with prejudice.

of McGee and Walker. Chitwood's statement of facts is a montage of assertion that is often difficult to follow. The court is therefore left to piece the facts together as best it can. All "facts" are presented in the light most favorable to the plaintiff. They may or may not be the actual facts.[2]

In 1987, Chitwood was employed by the City as a secretary to the police chief. Shortly after being hired, the plaintiff was made the records supervisor for the police department. She was placed in charge of maintaining incident and offense reports and was given control of purchasing supplies for the police department.

McGee is City Clerk for the City and is the personnel officer of the City. Although he has no supervisory role over the plaintiff, McGee did conduct disciplinary hearings regarding the plaintiff's employment. Until August 1, 1994, when he became Chief of Police, Walker was the administrative assistant to the then Chief of Police, Bob Parker.

On November 19, 1992, the plaintiff allegedly indicated to Walker a desire to resign from her employment. Because he believed that she would not be returning to work, Walker locked the plaintiff out of the police computer system. When Chitwood did return to work, Walker reprimanded her, commenting upon behavioral problems he had experienced in his dealings with her. He then restored her access to the computer system. In response, Chitwood allegedly complained to the then Chief of Police, Bob Parker. The plaintiff alleges that she was then removed from her duties relating to a traffic grant.

On November 22, 1993, the plaintiff complained of sexual harassment of her by Lieutenant Wendell Benefield. According to the plaintiff, Walker was aware of the alleged harassment and did not discipline Benefield. The plaintiff states that, in retaliation for her charges against Benefield, she began to receive complaints, no longer received overtime and had her traffic grant duties taken away from her.[3]

The plaintiff asserts a number of factual allegations concerning relations between Carol Teat and the police department. On or about January 28, 1993, the plaintiff alleges, another City employee, Carol Teat, complained of sex discrimination at the police department, complaining that

---

[2] Both parties have filed motions complaining that the evidentiary submissions of the other are inadmissible. The court will not address these issues because it concludes that the plaintiff has failed to support a claim in any case.

[3] What the traffic grant duties were and how the plaintiff managed to have them taken away from her twice is a matter of some bewilderment to the court. Perhaps they were removed only once — however, this is less than clear from the plaintiff's somewhat confusing (and confused) statement of facts.

she had been passed over for patrol duty assignment. On December 22, 1993, Teat received her right to sue from the EEOC. On February 14, 1994, Teat was suspended, allegedly by Walker, because she had allegedly been charged with a crime. However, Teat's suspension notice stated that if Teat were exonerated, she would be reinstated to her job with the department.

On March 28, 1994, while investigating Teat's claim, Teat's attorney, Charles Mauney ("Mauney"),[4] requested some incident reports concerning Teat from Chitwood. Chitwood states that one of her duties was to provide records of incident reports to members of the public requesting the information. Allegedly, McGee and Walker told the plaintiff not to give the records to Mauney. In reply, the plaintiff purportedly questioned the order of McGee and Walker. Plaintiff was allegedly informed by Walker that if she provided the records she would be terminated. In accordance with Walker's wishes, the plaintiff did not provide the records.[5] The plaintiff, through her own deposition testimony, contends that the defendants monitored her phone calls and meetings with Mauney.

On April 20, 1994, Walker reprimanded the plaintiff about her poor work performance and about derogatory comments that she had made about other employees. The plaintiff states that she was given the reprimand for allegedly making untrue statements to Tonya Gilbert, a co-worker in the plaintiff's office, for making derogatory comments about Walker and for not doing her own work. On April 25, 1994, the plaintiff filed with the EEOC a charge of sex discrimination and retaliation against the City.

On August 26, 1994, Tonya Gilbert broadcast a conversation between her and Chitwood about Chitwood's reprimand over the department loudspeaker so that McGee could overhear it. Averredly, on the basis of the broadcast, Walker instituted disciplinary proceedings against the plaintiff for insubordination and recommended that she be suspended for five days. On September 29, 1994, McGee, Walker and the plaintiff had a disciplinary hearing, after which McGee agreed with Walker's recommendation that the plaintiff be suspended for five days. On October 7, 1994, the City Council referred the matter to a grievance committee which upheld the recommendation, but reduced the length of the suspension to three work days. On October 25, 1994, the City

---

[4] Mr. Mauney was also at that time the plaintiff's attorney.

[5] Teat was tried on August 11-12, 1994 and was acquitted of the charges against her. She was offered reinstatement. Teat later filed suit, but at this point the facts in Teat's case are irrelevant to the facts in the present case and therefore will not be discussed.

Council voted on and approved the disciplinary action recommended by the grievance committee.

Also, during September and October, Walker began to investigate the purchasing practices of Chitwood. Walker had allegedly discovered that the plaintiff, when ordering certain quantities of supplies for the police department, would receive promotional items from the company from which she purchased the goods. The plaintiff allegedly would not report the receipt of these promotional items to the department and would keep the items for herself. The plaintiff claims that no policy existed stating that she was prohibited from keeping promotional items. She further avers that she marked out the receipt of the items to ensure that they did not appear on the "wrong line" item number on the budget.[6]

Walker allegedly consulted the City attorney, who informed him that the personal appropriation of promotional items was a violation of the Ethics Laws of the State of Alabama. The City attorney advised Walker to send a letter to the Alabama Ethics Commission about the matter. Allegedly, Walker sent the Ethics Commission a charge on October 26, 1994. In his affidavit, Walker states:

> At some point in time just prior to December 23, 1994, I spoke with an Ethics Commission investigator who informed me that a letter from the Ethics Commission office would be sent to Chitwood informing her that she was being investigated by the Ethics Commission. The investigator also informed me that Chitwood's case would be presented to the Ethics Commission. At that time I again spoke with the city attorney regarding Chitwood. The city attorney advised me that based on these developments, a suspension of Chitwood with pay from her employment would be proper under the Personnel Policy of the City of Fort Payne. . . . I suspended Chitwood with pay on December 23, 1994. I did so because the allegations against Chitwood were of a serious nature and the operation of the police department would be jeopardized if Chitwood, who had access to materials of a sensitive nature, computer records and records potentially relating to events for which she was under investigation, were permitted to remain in the department after being notified by the Ethics Commission of the investigation.

Walker Affidavit at 4-5. On December 27, 1994, the City Council considered the suspension and voted to suspend Chitwood, with pay, pending the resolution of the Ethics Commission investigation.

On February 16, 1995, the plaintiff filed a charge of discrimination with the EEOC claiming that the City had subjected her to disparate terms and conditions of employment and retaliation based upon gender.

On April 20, 1995, Walker received a letter from the Ethics Commission stating that it

---

[6] The meaning of the phrase "'wrong line' item number" is unexplained by the parties.

intended to forward its findings that Chitwood may have violated the Ethics Laws to the District Attorney for the 9th Judicial District of Alabama for consideration of prosecution. In response, Walker recommended to the City Council that Chitwood be suspended from her employment with the police department without pay. On April 25, 1995, the City Council adopted Walker's recommendation. In late May or early June 1995, the Grand Jury determined that there was insufficient evidence on which to find probable cause that Chitwood had intentionally violated the Ethics Laws.

On June 13, 1995, Walker initiated disciplinary proceedings against the plaintiff, recommending that she be terminated from her employment with the City. On July 12, 1995, a hearing was convened, at which McGee, Walker and the plaintiff's attorney were present. The hearing was continued until a later date and completed on October 12, 1995. At the conclusion of the hearing, McGee and Walker recommended to the City Council that the plaintiff be discharged from her employment on the grounds of "dishonesty, us[e] of time and resources for personal gain, the falsification and/or alteration of invoices, misappropriation, destruction, theft or conversion of public property for private use, computer fraud, behavior problems and performance/production problems." Walker Affidavit at 6. These charges, states the plaintiff, included claims that she took promotional items for personal use and that she failed to enter pawn tickets into the computer system but represented that she had. She claims that she was not obligated by her job description to enter pawn tickets into the computer, that another officer marked her tickets entered when they were not and that others who entered tickets into the computer who were behind in their duties were not cited.

On October 24, 1995, after the recommendation of Walker and McGee was presented to the City Council, the Council decided to hold its own hearing into the matter. On November 29, 1995, a hearing was held before the City Council regarding the recommendation for termination of the plaintiff.[7] The hearing was not completed on that day and was continued until December 11, 1995, when the City Council concluded the hearings. On January 23, 1996, the City Council voted to terminate Chitwood's employment.

The plaintiff argues that other male officers who were similarly situated to her and who were charged with criminal conduct were not terminated. The plaintiff points to five city officers

---

[7] Plaintiff's attorney was present at all hearings.

who were not terminated. Eddie Dawson, the plaintiff alleges, had criminal charges brought against him for disorderly conduct and discharging a firearm in a dispute with his neighbor. Mike Grant, Freddie Hairel and Don Gilbert each had criminal charges leveled against him for assault. Finally, McGee has been arrested twice, once in 1987 for driving under the influence of alcohol and once in 1991 for public intoxication. Walker states that except for the incident with Gilbert, he was not Police Chief when these events occurred. The plaintiff does not dispute this fact.

## Contentions & Analysis

### I. Title VII and § 1983 Claims Against the City and Individual Defendants for Gender-Based Discrimination and Retaliation.

The plaintiff complains that she was discriminated against by the City on the basis of gender and that she was retaliated against for engaging in protected activity under Title VII. Chitwood's discrimination claims include a claim that, by suspending her and terminating her employment with the City and by treating her differently in general, the City discriminated against her based upon her gender. The plaintiff also asserts that, because Walker and McGee were mean to her and undermined her authority, she was exposed to a hostile work environment. Finally, Chitwood complains that in terminating her after she complained about not being allowed to turn over documents to Teat's attorney, she was retaliated against in violation of Title VII.

### A. Discrimination Claims: Disparate Treatment Gender Discrimination and Hostile Environment Sex Harassment.

> Title VII provides that "[i]t shall be an unlawful employment practice for an employer--(1) to ... discharge any individual . . . because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. S 2000e- 2(a). Disparate treatment under Title VII occurs when "[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1313 (11th Cir.1994) (quoting International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335-36 n. 15 [] (1977) (citations omitted)).

United States v. Crosby, 59 F.3d 1133, 1135 (11th Cir. 1995).

A gender-based claim brought under Title VII can either be for disparate impact, disparate treatment or sexual harassment. A disparate treatment claim arises when, based upon the illegitimate motive of gender, an individual or group of individuals is treated differently with regard

to the "terms, conditions or privileges" of employment. A sex harassment claim comes to be when an individual or group of individuals is treated differently by a supervisor or other employee in order to procure sexual liberties from the individual (quid pro quo) or when the employer allows a hostile environment based on sex.

The plaintiff first claims to be the victim of a disparate treatment in her employment. A plaintiff may establish a claim of disparate treatment either through direct evidence or by circumstantial evidence, utilizing the burden-shifting scheme set out in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). No dispute exists that the plaintiff has no direct evidence of discrimination.

> Despite a Title VII plaintiff's failure to present direct evidence of discrimination, he may nevertheless present sufficient circumstantial evidence of discrimination to create a jury question. In evaluating Title VII claims supported by circumstantial evidence, we use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 [] (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 [] (1981). Under that framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802 []; Burdine, 450 U.S. at 253-54 & n. 6 [].
>
>> Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.
>
> Burdine, 450 U.S. at 254, 101 S.Ct. at 1094 (footnote omitted).
>
> The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action. McDonnell Douglas, 411 U.S. at 802 []; Burdine, 450 U.S. at 254 []. To satisfy that burden of production, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Burdine, 450 U.S. at 254-55 [] (citation and footnote omitted). "[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Id. at 257, 101 S.Ct. at 1096 (emphasis added).
>
> If a defendant carries its burden of producing legitimate, nondiscriminatory reasons for its decision, the presumption of discrimination created by the McDonnell Douglas framework "drops from the case," and "the factual inquiry proceeds to a new level of specificity." Burdine, 450 U.S. at 255 & n. 10 []. However, elimination of the presumption does "not imply that the trier of fact no longer may consider evidence previously introduced to establish a prima facie case." Id. at 255 n. 10 []. As the Supreme Court has explained:
>
>> A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there

> may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.

Id.

Once a defendant satisfies its intermediate burden of production, and the initial presumption of discrimination accompanying the prima facie case has been eliminated, the plaintiff has the opportunity to discredit the defendant's proffered explanations for its decision. According to the Supreme Court:

> [The plaintiff] now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision.... [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Id. at 256 [] (emphasis added) (citation omitted). In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. Id.; McDonnell Douglas, 411 U.S. at 804 [].

Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997).

The City first argues that, with respect to each purported violation of Title VII, the plaintiff has failed to establish her prima facie case under the McDonnell-Douglas proof scheme. To prove a prima facie case of discriminatory termination under the McDonnell-Douglas proof scheme, a plaintiff must demonstrate "(1) membership in a protected class, (2) qualification for the position held, (3) termination, (4) and replacement with a person outside the protected class." Walker v. NationsBank of Florida, 53 F.3d 1548, 1556 (11th Cir. 1995) (citing Rollins v. TechSOUTH, Inc., 833 F.2d 1525, 1532 n. 14 (11th Cir.1987)). The plaintiff has not alleged the final requirement, that she was replaced by someone of another gender.

Alternatively, the plaintiff may develop her prima facie case "by showing that [s]he was suspended or fired while others not in the plaintiff's protected class, 'having comparable or lesser qualifications', were retained." Nix v. WCLY Radio/Rahall Comm., 738 F.2d 1181, 1185 (11th Cir. 1984)(quoting Whiting v. Jackson State University, 616 F.2d 116, 121 (5th Cir. 1980)). This test requires that employee show that males similarly situated to her were not fired at the time of her termination. This test only relates to instances in which other members of an employer's workforce were not affected in the termination decision that resulted in the loss of employment by the employee. In this case, the plaintiff was the only individual who performed her job when she was terminated and there is no demonstration that others in the force (who may or may not have had experience in the position) were not qualified to perform the same work.

A third manner of developing a prima facie case of discriminatory termination is elaborated in Nix v. WCLY Radio/Rahall Comm., 738 F.2d at 1185 (emphasis added):

> In McDonald v. Santa Fe Trail Transportation Co., []427 U.S. 273 [(1976)], the Court held that an employer would violate Title VII if it fired black employees who participated in a theft of cargo while retaining whites guilty of the same offense. Id., 427 U.S. at 282-84 []. We have consistently held that a plaintiff fired for misconduct makes out a prima facie case of discriminatory discharge if he shows that he is a member of a protected class, that he was qualified for the job from which he was fired, and "that the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained". Davin v. Delta Air Lines, Inc., [] 678 F.2d 567, 570 [(5th Cir. Unit B 1982)]; accord Rohde v. K.O. Steel Castings, Inc., [] 649 F.2d 317, 322-23 [(5th Cir.1981)]; Brown v. A.J. Gerrard Mfg. Co., [] 643 F.2d 273, 276 [(5th Cir.1981)]; Green v. Armstrong Rubber Co., [] 612 F.2d 967, 968 [(5 Cir.1980)](per curiam), cert. denied, [] 449 U.S. 879 [(1980)]; Turner v. Texas Instruments, Inc., [] 555 F.2d 1251, 1255 [(5th Cir. 1977)]; see also Anderson v. Savage Laboratories, []675 F.2d 1221, 1224 [(11th Cir.1982)]. The prima facie case is established even if the plaintiff's replacement is also a member of the protected class. Cockrham v. South Central Bell Telephone Co., [] 695 F.2d 143, 145 [(5th Cir. 1983)](per curiam); EEOC v. Brown & Root, Inc., [] 688 F.2d 338, 340 [(5th Cir.1982)]; Byrd v. Roadway Express, Inc., [] 687 F.2d 85, 86-87 [(5th Cir.1982)]. "The principal focus of [Title VII] is the protection of the individual employee, rather than the protection of the minority group as a whole." Connecticut v. Teal, [] 457 U.S. 440, 453-54 [(1982)].

The defendant contends that the plaintiff can make out this version of the prima facie case only if she can show that others similarly situated to her were not disciplined with termination. The defendant argues that there were no males similarly situated to the plaintiff that were not terminated. In first arguing this point, the defendant states that all of the individuals to whom the plaintiff refers in her response were police officers, whereas Chitwood was a records clerk. Consequently, the functions, duties, &c., of the officers were entirely different from those of Chitwood. For this reason, the defendant states, the officers and Chitwood were not similarly situated.

Perhaps so, but the determination of whether disciplined employees were similarly situated does not involve only a determination of whether they were employed in the same capacities. As the Eleventh Circuit Court of Appeals stated in Pearson v. Macon-Bibb County Hospital Authority, 952 F.2d 1274, 1280 (11th Cir. 1992):

> The [Fifth Circuit Court of Appeals, in Rhode v. K.O. Steel Castings, Inc., 649 F.2d 317 (5th Cir. Unit A 1981),] cautioned against an emphasis on formal differences in job duties:
>> What is relevant is that two employees are involved in or accused of the same offense and are disciplined in different ways. Differences in job status and skill may well have an impact on the second phase of proof [in which the employer must produce a legitimate reason for the different treatment] but they should not defeat a

prima facie case. . . .
Id. at 322.

Also, in Jones v. Gerwens, 874 F.2d 1534, 1540 (11ᵗʰ Cir. 1989), the Court explained:

> [I]n cases involving alleged racial bias in the application of discipline for violation of work
> rules, the plaintiff, in addition to being a member of a protected class, must show either (a)
> that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of
> a person outside the protected class, and that the disciplinary measures enforced against him
> were more severe than those enforced against the other persons who engaged in similar
> misconduct.

Thus, the police officers listed by the plaintiff will only be considered similarly situated if
they can be found to have engaged in the same or similar conduct for which the plaintiff was
terminated.

Before examining the plaintiff's claims, this court notes that the reasons given for the
plaintiff's suspension and the reasons given for her termination are different. Chitwood's
suspension was premised upon her having potentially engaged in a violation of Alabama's Ethics
Law, whereas her termination was based upon a host of reasons, including the actions that
prompted Walker to believe her to have violated the Ethics Law, her dissembling about failing to
input pawn tickets into a database, her general behavior problems and her general dishonesty.

The court also notes that Parker, the Chief of Police in charge of disciplining all but one of
the officers referred to by the plaintiff, was no longer a decision-maker when the plaintiff was
suspended and terminated. Thus, his decisions concerning the suspension and termination of
employees cannot be attributed to Walker in determining if the plaintiff's termination was the result
of a discriminatory animus.

The remaining officer, Don Gilbert, was arrested by the Jackson County Sheriff's
Department for assault in the third degree. When Walker learned of the charges against Gilbert, he
was suspended, first with pay and then later without. Once the charges against him were dismissed,
Gilbert was reinstated. With respect to suspensions, even if the crimes of Gilbert and the plaintiff
were similar, Gilbert was treated the same.

The actions of the City toward the plaintiff and the actions of the City toward Gilbert were
different in that the City terminated the plaintiff but not Gilbert. However, the plaintiff still fails to
state a prima facie case. The actions in which Gilbert and the plaintiff were engaged were not
similar. Gilbert's actions did not impugn his trustworthiness, he was not on duty at the time of his
offenses, and the victim of his actions was not the police department for which he worked. The

same cannot be said of the plaintiff's acts.

The plaintiff also makes a comparison between herself and Benefield, who she alleges was also deficient in inputting pawn tickets. Perhaps so, but it does not appear that Benefield dissembled about inputting his tickets. In addition, plaintiff insinuates that Benefield signed her name to pawn tickets that he did not input and that as a result she was wrongly accused of lying about not entering the tickets into the database. However, the plaintiff does not offer proof that Walker knew of any alleged deception undertaken by Benefield. Walker's grounds for disciplining the plaintiff, even if unjustified or not based in fact, had not developed against any other department member prior to the plaintiff. Therefore, the plaintiff has failed to state a prima facie case.

The plaintiff also states that she was discriminated against in a general fashion. This claim has not been elaborated with any clarity by the plaintiff and the court sees no reason to go to any pains to elaborate the claim. If by general discrimination, the plaintiff's complaint is that, unlike a male non-officer in the department, she was not allowed to drive a police department automobile, her claim is not only trivial, it is also unsupported. The male officer used the automobile to install street signs and to map the city. Unless the plaintiff was required to perform similar tasks (and she was not), the plaintiff has no claim.

For these reasons, the plaintiff's Title VII claims of discrimination against the City will be DISMISSED. For the same reasons, the plaintiff's § 1983 claims against Walker and McGee for a violation of the equal protection clause based upon gender discrimination will also be DISMISSED.

On the issue of whether Walker's alleged meanness towards the plaintiff will support a hostile environment claim against the City, the court finds that this is not so. "Hostile environment sexual harassment occurs when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.'" Steele v. Offshore Shipbuilding, 867 F.2d 1311, 1315 (11th Cir. 1989) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)). To establish that she is the victim of a hostile work environment, a plaintiff must demonstrate that

> (1) she belonged to the protected groups at issue;  (2) she was subjected to unwelcome
> sexual and racial harassment;  (3) the harassment was based upon her gender and race;  (4)
> the harassment affected the conditions of her employment;  (5) the defendant (the county, as
> represented by Bowden) acted under color of law;  and (6) the defendant acted with
> discriminatory purpose or intent.  See Cross v. Alabama, 49 F.3d 1490, 1504, 1507-08 (11th
> Cir.1995).

Watkins v. Bowden, 105 F.3d 1344, 1355 (11th Cir. 1997).  The Supreme Court has stated that demonstrating that the alleged "harassment affected the conditions of her employment" involves satisfying a two-prong standard:

> This standard . . . takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury.  As we pointed out in Meritor, "mere utterance of an . . . epithet which engenders offensive feelings in an employee," ibid. (internal quotation marks omitted) does not sufficiently affect the conditions of employment to implicate Title VII.  Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.  Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

Harris v. Forklift Sys., 510 U.S. 17, 21-22 (1993).  The Eleventh Circuit Court of Appeals has noted favorably a comment in Justice Ginsburg's concurring opinion, that:

> [T]he adjudicator's inquiry should center, dominantly, on whether the discriminatory conduct has unreasonably interfered with the plaintiff's work performance. . . . It suffices to prove that a reasonable person subjected to the discriminatory conduct would find, as the plaintiff did, that the harassment so altered working conditions as to "ma[k]e it more difficult to do the job."

Harris, 510 U.S. at 25, 114 S.Ct. at 372 (Ginsburg, J., concurring) (emphasis added) (quoting Davis v. Monsanto Chem. Co., 858 F.2d 345, 349 (6th Cir.1988), cert. denied, 490 U.S. 1110 [] (1989)) (second alteration in original).

Watkins v. Bowden, 105 F.3d 1344, 1355 n.21 (11th Cir. 1997).

The plaintiff argues that she satisfies the objective portion of the two-prong test because Walker did not allow her to exercise supervisory authority over her underlings and because she had an ethics complaint filed against her.  However, given the actions in which the plaintiff allegedly engaged, the ethics complaint may have been merited, although nothing came of it.  Second, that Walker overruled the plaintiff and allowed her underling, a woman, to be insubordinate, does not, without more, show a hostile animus based upon gender.  To satisfy the objective prong of the Harris standard, the remarks must be objectively demeaning comments that are either sexual in nature or that are motivated by a gender-related animus.  There is no indication that either is the case.  Furthermore, there is no proof that the alleged "meanness" of Walker so upset the plaintiff that it impaired her ability to perform her work.  Any claim that the plaintiff was subjected to a hostile work environment will be DISMISSED.

**B. Gender-Based Retaliation Claim under Title VII.**

The plaintiff has claimed two bases for her Title VII retaliation claim. First, the plaintiff avers, that she was disciplined and terminated consequent to her questioning the alleged decision of Walker and McGee to instruct her not to present documents to Teat's attorney. She states that the causal connection is apparent because Walker informed her that she would be terminated if she provided the documents to Teat's attorney. The plaintiff's second claim is that when she complained of sex discrimination, apparently by Benefield, she was taken off of her traffic grant duties in late 1993, at least one year prior to her filing of her February 1995 charge.

The defendants argue that on the first claim, the plaintiff's actions were not statutorily protected because providing public documents to individuals requesting them was a one of her job functions. Thus, had she provided the documents to Teat, the plaintiff would not have been actively engaging in independent behavior for which she was protected, because she was doing that which, independent of the circumstances, she was required to do. Second, Chitwood's actions were not causally related to her later suspension and termination.

> Under Title VII, it is an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. S 2000e-3(a). As with a discriminatory treatment claim, a plaintiff alleging a retaliation claim under Title VII must begin by establishing a prima facie case; the plaintiff must show that (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities. Coutu v. Martin County Bd. of County Com'rs, 47 F.3d 1068, 1074 (11th Cir.1995) (per curiam).

Little v. United Technologies, 103 F.3d 956, 959 (11th Cir. 1997).

The plaintiff failed to engage in a statutorily protected activity, but not for the reasons the City gives. That the plaintiff is obligated to perform an act and, therefore, has a requirement to perform that act, the requirement does not preclude performing the act for another, uncompelled reason. Therefore, that the plaintiff may have been required to provide the documents does not preclude her from doing so because of an intention to aid in Teat's gender discrimination case. Further, had the plaintiff not complied with the wishes of Walker and McGee, the reason for her ensuing termination may not have been that she did her job, but that by doing her job, she aided in

Teat's ongoing discrimination suit.[8]

However, in <u>Couto v. Martin County Bd. Of Com'rs,</u> 47 F.3d 1068 (11ᵗʰ Cir. 1995), the Eleventh Circuit Court of Appeals found that because the plaintiff did not state that her objections to certain behavior were based upon a violation of Title VII, the employer could not have known that she was acting in opposition to purported discrimination. Therefore, there was no showing that she was engaging in statutorily protected activity. Similarly here, the plaintiff told no one that her opposition to the orders of Walker and McGee was based upon her decision to aid in Teat's discrimination suit. Instead, all that plaintiff allegedly said was that she was required to give Teat's attorney the records as a part of her job description. She made no mention that she was also intending to aid in the discrimination lawsuit and therefore, no one could have known that she considered her action to be in the furtherance of Teat's discrimination suit. Absent any knowledge that her comments were meant to be statutorily protected activity, the City could not have retaliated on that basis.

Further, the court finds no indication that the statements that the plaintiff made were causally related to her suspension and termination. She potentially, according to the City attorney, engaged in ethics violations, sufficient to warrant the State Ethic's Commission's submission of the case to the District Attorney for prosecution. In addition, the time between the plaintiff's alleged statement and the initiation of Walker's investigation is over six months. She was not suspended until three months after Walker's investigation. The Title VII retaliation claim of the plaintiff against the City will be DISMISSED. <u>See</u> <u>Couto,</u> 47 F.3d at 1074-75.

On the plaintiff's claim that Walker and McGee retaliated against her for complaining of Benefield's harassment, the claim is clearly outside of the 180-day limitations period. In addition, in her statement of facts, the plaintiff does not give a clear picture of either the cause of her removal from traffic grant duties or the time of her removal from the duties in either 1992 or 1993.

Often attorneys will fish for a judgment indiscriminately, casting about multiple claims on weak lines and baiting their hooks with insubstantial facts. The plaintiff's claims of retaliation are

_____

[8] The court notes that the City's arguments are leveled primarily at the plaintiff's acts, not at the statements she allegedly made. It is in this respect that they fail. The argument goes to whether the plaintiff actually believed that she was engaging in statutorily protected activity and concludes that she could not have even intended to engage in statutorily protected activity, which is false. An employer who does not know that an employee is engaging in statutorily protected activity cannot be said to have retaliated against it. In addition, the intention of the actor may be irrelevant. As was stated above, if the defendant retaliates to activity it perceives as aiding in a discrimination action, it is irrelevant whether the plaintiff intended to engage in any statutorily protected activity.

launched on such poor-grade threads and mealy assertions.  The retaliation claims will be
DISMISSED.

## II. Section 1983 Claims Against the City and Individual Defendants for Retaliation against First Amendment Activity.

The plaintiff bases her First Amendment retaliation claim upon the same set of facts on
which she based her gender retaliation claim.

The Supreme Court held that in certain cases an adverse employment action can constitute
retaliation for an employee's speech in Pickering v. Board of Education, 391 U.S. 563 (1968).  In
elaborating the circumstances upon which a First Amendment retaliation claim may be stated, the
Eleventh Circuit Court of Appeals has said:

> A state may not demote or discharge a public employee in retaliation for protected
> speech.  This circuit has developed a four-part test to determine whether an
> employee suffered such retaliation.  First, a court must determine whether the
> employee's speech may be fairly characterized as constituting speech on a matter of
> public concern.  If so, the district court must weigh the employee's first amendment
> interests against the interest of the state, as an employer, in promoting the efficiency
> of the public services it performs through its employees.  Should the employee
> prevail on the balancing test, the fact-finder determines whether the employee's
> speech played a substantial part in the government's decision to demote or
> discharge the employee.  Finally, if the employee shows that the speech was a
> substantial motivating factor in the employment decision, the state must prove by a
> preponderance of the evidence that it would have reached the same decision even in
> the absence of the protected conduct.

Morgan v. Ford, 6 F.3d 750, 753-54 (11th Cir.1993) (quotation marks, citations, brackets,
and ellipsis omitted), cert. denied, --- U.S. ----, 114 S.Ct. 2708 [] (1994).  "The threshold
question of whether an employee's speech may be fairly characterized as constituting speech
on a matter of public concern is a question of law [. . . .]"  Deremo v. Watkins, 939 F.2d
908, 910 (11th Cir.1991).

Watkins v. Bowden, 105 F.3d 1344, 1352-53 (11th Cir. 1997).  The defendant's primary argument is
that the plaintiff's speech does not satisfy the first prong of the Pickering test, that the speech be
on a matter of public concern.  The plaintiff, the defendant states, did not publicly raise complaints
about not being permitted to provide records to Teat's attorney.  She shared her comments with
Walker and Teat's attorney alone.  She did not attempt to make publicly known any complaints that
Walker and McGee were preventing her from performing her job functions or that Walker and
McGee were attempting to stonewall Teat's discrimination suit.  The plaintiff states that the matter
is one of public concern because she raised it to Teat's attorney.

> For an employee's speech to rise to the level of public concern, it must relate to a matter of
> political, social, or other concern to the community. Therefore, this court must determine
> whether the purpose of [the plaintiff's] speech was to raise issues of public concern or to
> further her own private interest. Morgan, 6 F.3d at 754. In making this determination, we
> consider the content, form, and context of the employee's statements, the employee's
> attempts to make the concerns public, and the employee's motivation in speaking. See
> Morgan, 6 F.3d at 754; Deremo, 939 F.2d at 910-11.

Watkins v. Bowden, 105 F.3d at 1353. The plaintiff's speech was not a matter of public concern.
It was not addressed to the public generally. The plaintiff has not demonstrated that she was
making the comment for purposes of informing the general public about conditions at the police
department. In the best light, the plaintiff's comments are those of an employee attempting to
question her employer about a (possibly bad) decision. This is insufficient to support a claim that
the speech is of public concern.

The plaintiff attempts to make her speech seem a matter of public concern by alleging that
in the midst of her complaints, she also told Teat's attorney that Walker was an "asshole" because
of the manner in which she was being treated. This attempt of the plaintiff to spice up her claim is
of no avail. The comment, though communicated to Teat's attorney, was a personal complaint,
about her treatment as an employee, not about policies and practices in the police department in
general. A Pickering analysis may well bar such a claim because of the method and language.

With respect to the individual defendants, even were the plaintiff to have a viable First
Amendment claim, neither Walker nor McGee could be held liable because both are protected by
qualified immunity. As the Eleventh Circuit Court of Appeals stated in Hansen v. Soldenwagner,
19 F.3d 573, 576 (11th Cir. 1994):

> Because Pickering requires a balancing of competing interests on a case-by-case basis, our
> decisions tilt strongly in favor of immunity by recognizing that only in the rarest of cases
> will reasonable government officials truly know that the termination or discipline of a public
> employee violated "clearly established" federal rights. See Dartland, 866 F.2d at 1323-24.
> When "no bright-line standard puts the reasonable public employer on notice of a
> constitutional violation, the employer is entitled to immunity except in the extraordinary case
> where Pickering balancing would lead to the inevitable conclusion that the [act taken
> against] the employee was unlawful." Id. at 1323 (emphasis added); see also Sims v.
> Metropolitan Dade County, 972 F.2d 1230, 1236-37 (11th Cir.1992); Busby v. City of
> Orlando, 931 F.2d 764, 773- 75 (11th Cir.1991) (per curiam).

It is a dubious proposition that any retaliation by municipal officers for personal complaints made
by employees of a municipality to specific individual non-employees is a First Amendment
violation. Given the uncertainty of such a claim in light of other Eleventh Circuit law, the claim

could hardly be considered clearly established. Thus, the plaintiff's First Amendment claims against the individual defendants are barred by qualified immunity.

Finally, the municipality could not be held liable for retaliation had it occurred. Municipalities are not to be held liable for § 1983 violations under a theory of respondeat superior. Instead, the retaliation must be the result of a "custom or policy" of the City, such "custom or policy" oftentimes being a decision of the municipality's final decisionmaker. Board of County Comm'rs of Bryan County v. Brown, --- U.S. ---, --- S.Ct. ---, WL 201995 at * 4-5 (April 28, 1997). The final decision on suspending or terminating the plaintiff was made each time by the City Council, even though suggested by Walker and McGee. Not being final policymakers in suspension and termination decisions, the actions of Walker and McGee cannot be attributed to the City in determining its liability; final policymaking authority rested with the City Council. Although the termination and suspension decisions issued from the City Council, such as to make those decisions attributable to the City, there has been no demonstration that the decision of the Council was based upon discrimination or illegitimate anti-speech motives. In acting to suspend and terminate the plaintiff, the City Council decided only after public hearing, in which none of the Council representatives made note of the plaintiff's comments.[9] Chitwood's First Amendment claims will be **DISMISSED**.

## III. State-law Claims.

### A. Defamation.

The plaintiff claims that comments made by Walker and McGee about her in deciding to recommend her suspension and termination — that she took police department property and that she made purchases of policy department supplies for her own benefit — were defamatory. In addition, the petitioner allegedly claims that statements made by Walker and McGee in the termination hearing were defamatory and actionable.

> To establish a prima facie case of defamation, the plaintiff must show that the defendant was at least negligent, see Mead Corp. v. Hicks, 448 So.2d 308 (Ala.1983); RESTATEMENT (SECOND) OF TORTS § 558, § 580B (1977), in publishing a false and defamatory statement to another concerning the plaintiff, RESTATEMENT (SECOND) OF TORTS § 558, which is either actionable without having to prove special harm (actionable per se) or actionable upon

---

[9] Questions about the comments were made at public hearing over a year and a half earlier, but that is not the subject of the present action.

allegations and proof of special harm (actionable per quod). Restatement (Second) of Torts § 558; see also Albert Miller & Co. v. Corte, 107 F.2d 432 (5th Cir. 1939), cert. denied, Corte v. Albert Miller & Co., 309 U.S. 688 [] (1940). Spoken words that impute to the person of whom they are spoken the commission of an indictable criminal offense involving infamy or moral turpitude constitute slander actionable per se. Ceravolo v. Brown, 364 So.2d 1155 (Ala.1978), quoting Marion v. Davis, 217 Ala. 16, 114 So. 357 (1927); Tonsmeire v. Tonsmeire, 281 Ala. 102, 199 So.2d 645 (1967), quoting Marion v. Davis, 217 Ala. 16, 114 So. 357 (1927); Lewis v. Ritch, 417 So.2d 210 (Ala.Civ.App.1982); ALA.CODE 1975, § 6-5-180. Oral publication imputing a crime of larceny falls within this definition. Phillips v. Bradshaw, 167 Ala. 199, 52 So. 662 (1910); Lewis, supra, at 211-12. When a defamatory publication is actionable per se, the law infers injury to reputation as a natural consequence of the defamation and, as a result, the plaintiff is entitled to presumed damages. Thus, imputations of indictable criminal offenses are slanderous per se and relieve the plaintiff of the requirement of proving "actual harm to reputation or any other damage" in order to recover nominal or compensatory damages. W. PROSSER AND W. KEETON, THE LAW OF TORTS, § 112, at 788 (5th ed. 1984). Of course, in such cases, the plaintiff's entitlement to presumed damages depends on whether he or she proves the remaining elements of defamation, and on whether the defendant alleges and shows the existence of an affirmative defense, such as truth or privilege. Defendants argue that the defenses of absolute and conditional privilege apply to their alleged slanderous comments. In libel and slander actions, a showing that the alleged defamation was made "on a privileged occasion or under circumstances and conditions which made it privileged in law" constitutes a complete defense. Ferdon v. Dickens, 161 Ala. 181, 49 So. 888 (1909).

Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091-92 (Ala. 1988). The comments allegedly made by the individual defendants impute criminal wrongdoing to he plaintiff. Thus, they are actionable per se. However, the defendants state, the statements of Walker and McGee were unpublished and are privileged.

> The courts are divided as to whether an absolute privilege attaches to communications made in the course of quasi-judicial proceedings. Some courts recognize only a conditional privilege. Gardner v. Hollifield, 97 Idaho 607, 549 P.2d 266 (1976); Elder v. Holland, 208 Va. 15, 155 S.E.2d 369 (1967). The majority view, and the view we now adopt, is that an absolute privilege attaches to communications made in the course of quasi-judicial proceedings. Brubaker v. Board of Education, School District 149, Cook County, Illinois, 502 F.2d 973 (7th Cir.1974), order clarified, 527 F.2d 611 (7th Cir.1975), cert. den., 421 U.S. 965 [] (1975); Mock v. Chicago, R.I. & P.R. Co., 454 F.2d 131 (8th Cir.1972); Roberts v. Lenfestey, 264 So.2d 449 (Fla. Dist. Ct. App.1972).
>    Where an administrative proceeding is conducted with the same safeguards as those provided in judicial proceedings, e.g., notice and opportunity to be present, information as to charges made and opportunity to controvert such charges, the right to examine and cross-examine witnesses, the right to submit evidence on one's behalf, the right to be heard in person, and the presence of an objective decision-maker, see Board of Education of Choctaw County v. Kennedy, supra, that proceeding is quasi-judicial in nature and statements made in the course of the proceeding should be absolutely privileged.

Webster v. Byrd, 494 So.2d 31, 34 (Ala. 1986). The remarks of the defendants, made incident to the plaintiff's termination hearing or investigations leading up to the decision to prosecute the plaintiff

for a violation of Alabama's Ethics Laws, are absolutely privileged as communications made as part of the quasi-judicial suspension and termination proceedings.

The plaintiff cites Hoover v. Tuttle, 611 So.2d 290 (Ala. 1992), for the proposition that the privilege enjoyed by the defendants is removed if the statements made were not in good faith or were prompted by actual malice. Even if the alleged statements made by Walker and McGee were malicious under Alabama law, that would be irrelevant. The presence of malice or bad faith removes only conditional privilege. Absolute privilege is an absolute bar to a defamation action, regardless of any allegations of bad faith, so long as the defamatory statements are material to the subject of the quasi-judicial proceeding. Barnett v. Mobile County Personel Bd., 536 So.2d 46, 51 (Ala. 1988). In addition, the plaintiff has not demonstrated that the statements of Walker and McGee were otherwise published by them. The plaintiff's defamation claim will be DISMISSED.

## B. Abuse of Process.

The defendants argue that the plaintiff's abuse of process claim should be dismissed because the decision to prosecute the alleged Ethics Laws violations of the plaintiff was not made by the defendants, but by the District Attorney for the Ninth Judicial Circuit of Alabama. The plaintiff does not raise any protest to this argument in her response brief. Because the decision to prosecute was not made by either Walker or McGee and because it appears that the presentation of the charges against Chitwood were made to the grand jury through proper process and without malice, see Drill Parts and Serv. Co., Inc., v. Joy Mfg. Co., 619 So.2d 1280, 1286-88 (Ala. 1993), the plaintiff's abuse of process claim will be DISMISSED.

## C. Interference with Business Relations.

To state a claim of interference with business relations by a co-employee under Alabama law, a plaintiff is required to demonstrate:

> 1) the existence of a contract or business relation; 2) the defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant's interference; and 5) damage to the plaintiff as a result of the interference. Gross v. Lowder Realty Better Homes & Gardens, 494 So.2d 590 (Ala.1986), citing RESTATEMENT (SECOND) OF TORTS § 767 (1977).

Soap Co. v. Ecolab, 646 So.2d 1366, 1371 (Ala. 1994). In addition, the plaintiff "must produce

substantial evidence of fraud, force, or coercion on the defendant's part." Barber v. Business
Products Center, Inc., 677 So.2d 223, 227 (Ala. 1996). Actions against co-employees, such as
Walker, involve additional elements of proof.

> In an action against a co-employee, the plaintiff must also prove that the co- employee was
> not acting on behalf of the employer or otherwise within the scope of the co-employee's
> employment and that the co-employee was acting with actual malice.

Henderson v. Early, 555 So.2d 130, 131-32 (Ala. 1989).

Walker contests Chitwood's claim that he intentionally interfered with her business relations
on the grounds, one, that his actions were justified, two, that the plaintiff cannot prove fraud, force
or coercion, and three, that he was acting within the scope of his employment. The plaintiff states
that Walker investigated her out of hostility in violation of any City policy and was therefore acting
outside of the scope of his employment. In addition, argues the plaintiff, the threats to terminate
her if she provided records to Teat made by Walker in April 1994 and her later termination
demonstrate malice.

The court is of the opinion that hostility of a supervisor towards an employee does not
render an otherwise legitimate investigation of an employee outside the scope of employment.
However, the court also finds that the actions of Walker were justified.

> As was noted in Gross, the fourth element of tortious interference with business relations,
> the absence of justification for the interference, really relates to an affirmative defense to be
> pleaded and proved by the defendant, namely, the defense of justification. Generally,
> whether the defendant is justified in the interference is a question to be resolved by the trier
> of fact. Gross, 494 So.2d at 597, citing Polytec, Inc. v. Utah Foam Products, Inc., 439
> So.2d 683 (Ala.1983).
>     The following factors should be considered in determining whether a defendant's
> interference was justified:  (1) the nature of the actor's conduct;  (2) the actor's motive;  (3)
> the interests of the person in whose business the actor's conduct interferes;  (4) the interests
> sought to be advanced by the actor;  (5) the social interests in protecting the freedom of
> action of the actor and the contractual interests of the other;  (6) the proximity or
> remoteness of the actor's conduct to the interference;  and (7) the relations between the
> parties. Gross.

Soap Co. v. Ecolab, Inc., 646 So.2d at 1371. Walker's conduct seems to have been aimed at
determining if the plaintiff was engaged in a violation of the Alabama Ethics Laws, although his
motivation to begin the investigation may not have been wholly innocent. There was, apparently,
no love lost between Walker and Chitwood. However, the motivation to uncover wrongdoing,
even if glossed with hostility towards the person being investigated, is still a legitimate motivation.

The interests of the plaintiff in retaining promotional items was arguably illegal. At least, the behavior of the plaintiff could be seen (and was seen) by others as illegitimate. Walker, in acting, was attempting to prevent what he perceived as illegal activity. In the present case, given the social interest in the efficient functioning of the police department and in the prevention of illegal activity in the department designated to enforce the law, the plaintiff's contractual interests are relatively minor. All of these factors indicate that Walker was justified in terminating the plaintiff's relations with the police department. Therefore, the plaintiff's interference with business relations claim will be **DISMISSED**.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment will be **GRANTED**. The plaintiff's claims will be **DISMISSED**, with prejudice.

This _____ 7th day of May 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE